# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Newman, ) | |
|     Plaintiff, ) | No. CV-08-583-TUC-CKJ-DTF |
| ) | |
| vs. ) | **REPORT & RECOMMENDATION** |
| ) | |
| Lifeline Systems, Co., ) | |
|     Defendant. ) | |
| ) | |

      Pending before the Court is Plaintiff's November 14, 2008 Request for Remand. (Dkt. 6.) Defendant filed an opposition and Plaintiff filed a reply. (Dkts. 7, 8.) As directed by the Court, Defendant also filed a sur-reply. (Dkt. 19.) Pursuant to the Rules of Practice in this Court, the matter was assigned to Magistrate Judge Ferraro for a report and recommendation. The Magistrate Judge granted a request for oral argument, which was held on April 16, 2009. The Magistrate recommends the District Court, after its independent review of the record, enter an order granting Plaintiff's Request for Remand.

## FACTUAL AND PROCEDURAL BACKGROUND

      On October 3, 2008, Plaintiff David Newman, as the surviving beneficiary of William Newman, filed a complaint in Pima County Superior Court against Lifeline Systems, Co., dba as Lifeline Systems, Inc., alleging wrongful death. (Dkt. 1-3 at 3.) The Complaint alleges Defendant had a contract with Pima County to provide emergency services to qualified elderly and disabled persons. (*Id.*) Plaintiff alleges William Newman was provided such services, but it took five hours for anyone to respond when he triggered his emergency alert. (*Id.* at 3-4.) Plaintiff further alleges William Newman died due to Defendant's

negligence and Plaintiff has suffered as a consequence. (*Id.* at 4.)

On October 28, 2008, Defendant filed a Notice of Removal, removing the action to this Court under 28 U.S.C. § 1332. Defendant simultaneously filed an Answer. (Dkt. 2.)

## DISCUSSION

Plaintiff contends the Court should remand this action because Defendant waived its right to remove through a forum selection clause in its contract with Pima County. Defendant argues the forum selection clause does not apply to this case and removal was proper. Before reaching the parties' dispute over waiver and the forum clause, the Court must first assess whether it has subject matter jurisdiction.

**Federal Jurisdiction**

The district courts have original jurisdiction of cases in which the amount in controversy exceeds $75,000, and the parties are citizens of different states. 28 U.S.C. § 1332(a)(1). A corporation is "a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The legal representative of a decedent's estate is treated as a citizen of the same state as the decedent. 28 U.S.C. § 1332(c)(2). Title 28 U.S.C. § 1441(a) provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant."

Plaintiff did not contest this Court's jurisdiction over the action in his briefs nor at oral argument.[1] Plaintiff (as the representative of decedent) is a citizen of Arizona and Defendant is a citizen of Massachusetts; the amount in controversy exceeds $75,000. Further, Plaintiff does not contend Defendant violated any of the procedural requirements for removal set forth in 28 U.S.C. § 1446 – the Court's review indicates removal was timely and Defendant

---

[1] Plaintiff's motion to remand focuses almost entirely on his contention that the state courts of Arizona have personal jurisdiction over Defendant. (Dkt. 6.) That issue is not in dispute; at oral argument, Defendant stated it did not contest personal jurisdiction in Arizona (RT 4/16/09 at 13). Further, Plaintiff agreed at oral argument that personal jurisdiction was not a basis for remand, rather it showed jurisdiction would be proper if the case were remanded. (*Id.* at 5.)

- 2 -

1 complied with the statutory requirements. (Dkt. 1.) It is Defendant's burden upon removal
2 to demonstrate the Court has federal subject matter jurisdiction and it has satisfied that
3 burden. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (noting the presumption
4 against removal jurisdiction).

5 **Waiver of Removal**

6 Plaintiff contends Defendant waived its right to remove this case by agreeing to a
7 forum selection clause in the Emergency Alert System and Monitoring Services Agreement
8 between Defendant and Pima County ("Agreement"). Plaintiff bears the burden of
9 demonstrating that Defendant waived its right to remove. *Ferrari, Alvarez, Olsen &*
10 *Ottoboni v. Home Ins. Co.*, 940 F.2d 550, 554 (9th Cir. 1991). Forum selection causes are
11 presumed valid and enforceable absent specific circumstances Defendant has not raised in
12 this case – enforcement is shown to be unreasonable or the clause was obtained through fraud
13 or overreaching. *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). Thus, the Court
14 should remand a case over which it has jurisdiction when it is not the forum selected by the
15 parties. *Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 280 (9th Cir.
16 1984).

17 Plaintiff's argument raises two questions necessary to resolution of this motion:
18 (1) was William Newman a third-party beneficiary entitled to enforce the Agreement; and
19 (2) does the forum selection clause apply to a wrongful death negligence action?

20 Third-party Beneficiary Status

21 Under Arizona law, to establish third-party beneficiary status, a person or class of
22 persons must be indicated as a beneficiary in the contract:

> For a third party to maintain an action on a contract, the contract must have been entered into for the express benefit of the third party; the party cannot be merely an incidental beneficiary. The benefit must be both intentional and direct, and "it must definitely appear that the parties intend to recognize the third party as the primary party in interest."

26 *Araiza v. U.S. West Bus. Res., Inc.*, 904 P.2d 1272, 1278, 183 Ariz. 448, 454 (Ct. App. 1995)
27 (quoting *Norton v. First Fed. Sav.*, 624 P.2d 854, 856, 128 Ariz. 176, 178 (1981)); *see also*

- 3 -

1 *Lake Havasu Resort, Inc. v. Comm. Loan Ins. Co.*, 678 P.2d 950, 956, 139 Ariz. 369, 375 (Ct. App. 1983) (recognizing that contract can benefit class of which third party is a member). The third-party must be the "real promisee"; "[t]he promise must be made to him in fact although not in form," and the contract must evidence that the parties intended him to be privy to the promise. *Basurto v. Utah Constr. & Mining Co., Inc.*, 485 P.2d 859, 863, 15 Ariz. App. 35, 39 (1971).

Here, the Agreement including its attachments evidences that the parties intended to directly benefit a class, of which William Newman was a member. Accordingly, Mr. Newman was a third-party beneficiary. Most critical to this assessment is the fact that the purpose of the Agreement was for Defendant (for consideration) to provide emergency alert services to eligible elderly and physically disabled individuals, defined as "Members" (Dkt. 19-2 at 4-5, 10); Members were "**entitled** to receive services pursuant to th[e] Agreement" (*id.* at 29 (emphasis added)) and are mentioned repeatedly throughout (*id.* at 1-53). Thus, Members were promised an entitlement and the Agreement indicated an intention to provide a benefit to Members. Defendant was obligated to provide Members continuity of care, to not bill Members for covered services, and to provide Members prompt services at acceptable professional standards and in accordance with the law. (*Id.* at 10, 11, 43.) Further, Defendant was required to make a reasonable effort to obtain awareness of and incorporate Members' cultural customs into treatment and to provide Members interpretive services. (*Id.* at 52.)

Attachment B to the Agreement sets forth with specificity the services Defendant was obligated to provide and Members were entitled to receive. The stated service goals were to aid Member's self-sufficiency and well-being. (*Id.* at 21.) Persons providing the services had to have training regarding elderly and physically disabled populations. (*Id.*) Further, most of Defendant's sixteen listed tasks were direct service to Members: providing information and training about the service, installing the units, developing emergency plans

1 specific to each Member, as well as monitoring, testing, and responding to emergency alerts.[2]
2 (*Id.* at 21-22.) Defendant's payment was based on the installation, maintenance, and
3 monitoring of a unit per individual Member. (*Id.* at 21, 23.) All of these contractual
4 provisions make clear that Members, a group to which William Newman belonged, were
5 direct, intended beneficiaries of the Agreement.

6       This case is analogous to *Nahom v. Blue Cross and Blue Shield of Arizona, Inc.*, 885
7 P.2d 1113, 180 Ariz. 548 (Ct. App. 1994). In *Nahom*, an insured sued a hospital alleging he
8 was entitled to enforce a fixed fee contractual agreement between the hospital and the
9 insurer, Blue Cross. The court found the insured was a third-party beneficiary of the contract
10 because the fixed fee arrangement was an intentional and direct benefit to the subscriber, and
11 the insured was the "primary party in interest." Although the hospital and the insurer also
12 benefitted from the agreement, the focus of the limited fee provision was to benefit the
13 insured. Similarly, Members were primary parties in interest under the Agreement, which
14 provided them direct benefits and entitlement to services. Further, in *Nahom*, the court noted
15 that the defined class of "subscribers" were mentioned throughout the contract, just as
16 Members are referenced repeatedly in the Agreement.

17       To support its position that William Newman was merely an incidental beneficiary,
18 Defendant analogies this case to *Basurto v. Utah Constr. & Mining Co., Inc.*,[3] which

---

[2] In Defendant's Reply to the motion and at oral argument, Defendant asserted Pima County enrolled the members, provided the equipment, and installed the units. Defendant indicated its only role was to provide the electrical software and receive incoming calls; "[o]ther than a responsibility to handle incoming alert calls, Lifeline had no relationship with Plaintiff." (Dkt. 7 at 3.) These assertions, while they may be accurate, do not alter the terms of the Agreement or Defendant's contractual obligations to Members.

[3] Defendant relies on two other cases holding that persons who benefit from government contracts are assumed to be incidental beneficiaries with no entitlement to enforce the contract. *See County of Santa Clara v. Astra USA, Inc.*, 540 F.3d 1094, 1101 (9th Cir. 2008); *Smith v. Cent. Ariz. Water Conservation Dist.*, 418 F.3d 1028, 1035 (9th Cir. 2005). These cases do not control because they are based on federal law and involve federal contracts. Further, the assumption under federal law is overcome if there is "clear intent" to benefit a third-party; the standard for establishing "clear intent" under federal law, and thereby third-

- 5 -

1 involved a contract for construction work at a mining site. 485 P.2d 859, 15 Ariz. App. 35.
2 Basurto, an employee of the construction company, was injured on the site and he sought to
3 recover under the contract as a third-party beneficiary. *Id.* at 863, 15 Ariz. App. at 39. In
4 evaluating Basurto's relationship to the contract, the court relied on a paragraph captioned
5 "Protection of the Public, and Work, and Property":

> The Contractor shall provide and maintain all necessary watchmen, barricades, red lights and warning signs and take all necessary precautions for the protection and safety of employees on the work, of all other persons and adjacent private and public property. The Contractor at all times shall maintain adequate protection of the work from damage and shall protect the Owner's property and all persons thereon from injury, damage or loss by reason of any act or omission of the Contractor or any Subcontractor.

*Id.* at 862, 15 Ariz. App. at 38. The court held this provision created a duty upon which a tort could be premised. *Id.* at 863, 15 Ariz. App. at 39. However, it did not confer contractual third-party beneficiary status on employees because the relevant terms were about the relationship between the parties and protecting the owner from failures by the contractor. *Id.* at 864, 15 Ariz. App. at 40.

Drawing a parallel with *Basurto*, Defendant contends that "[o]verall, the Agreement governs the business relationship between Pima County and Defendant," and only one section of the Agreement, paragraph III.5, appears to benefit Members:

> COMPANY agrees to ensure that all Covered Services provided by COMPANY shall be instituted as promptly as is practicable, and in accordance with accepted community professional standards. COMPANY shall provide professional services in accordance with all laws, rules and regulations of all governmental authorities having jurisdiction.

(Dkt. 19-2 at 11.) Defendant argues the purpose of this provision was to protect Pima County from any failures by Defendant and to give the County a right of indemnity against Defendant. This argument is undermined by a review of the Agreement as a whole. The quoted paragraph is in the section captioned "Quality Management Provisions," and does not mention "protection" or "acts or omissions," which might intimate the intent is

---

party beneficiary status, is similar to the Arizona third-party standard set forth above. *See Santa Clara*, 540 F.3d at 1101-02; *Smith*, 418 F.3d at 1035.

indemnification. Further, there is a separate paragraph of the Agreement captioned "Indemnification," in which Defendant agrees to indemnify the County for actions arising out of any failures by Defendant. (*Id.* at 8.)

More importantly, Defendant's argument patently ignores the purpose of the Agreement and the many other express provisions setting forth the benefits intended for Members. The purpose of the contract in *Basurto* was not to benefit employees but to complete construction work, which incidentally included employee safety. The Agreement at issue here was created to provide direct services to "Members"; therefore, William Newman was not just an incidental beneficiary.

At oral argument, in response to the Court's question concerning what more was required to make William Newman a third-party beneficiary under the Agreement, the Defendant averred:

> [U]nder the case law, they would have to have asserted [sic] a clause within the contract indicating that all members who participate with this service are third party beneficiaries and the primary party in interest to the special services and that they would then be entitled to stand inside the shoes of Pima County to enforce agreement.[4]

(RT 4/16/09 at 16.) Although the Arizona standard is stringent, the caselaw does not establish the bright-line test advocated by Defendant. In *City of Phoenix v. Daly*, No. CV07-110, 2007 WL 3046758 (D. Ariz. Oct. 17, 2007), relied upon by Defendant to support its narrow view, the court did not require the kind of language identified by Defendant. Instead, in a section captioned "Third Party Beneficiary," the parties explicitly provided that the contract should **not** be construed to give benefits or rights to anyone other than the contracting parties and the contract was for the sole benefit of the named parties. *Id.* at *2. Thus, the *Daly* case undermines, rather than supports Defendant's narrow view. Had Pima

---

[4] In follow-up questioning, Defendant confirmed its position that there is a black-and-white rule applicable to third-party beneficiary status. Counsel agreed that "if there isn't a specific paragraph that says this is a third party beneficiary contract written to benefit the members of plan, that [the contracting parties] could have said almost anything else and it still wouldn't have been under Arizona law [a] third-party beneficiary contract." (RT 4/16/09 at 16-17, 23-24.)

- 7 -

1 County and Defendant intended Members to be merely incidental beneficiaries, thereby
2 limiting liability to third-parties, according to *Daly*, they could have explicitly provided for
3 this in the Agreement. Without such a provision in the Agreement, it does "definitely appear
4 that the parties intended to recognize the third party [Members] as the primary party in
5 interest." *Araiza v. U.S. West Bus. Res., Inc.*, 904 P.2d at 1278, 183 Ariz. at 454.

<u>Application of the Forum Selection Clause to this Negligence Action</u>

7 The Agreement's forum selection clause provides: "Any action relating to this
8 Agreement shall be brought in a court of the State of Arizona in Pima County." (Dkt. 19-2
9 at 7.) Defendant argues the forum selection clause does not encompass this tort action.
10 Plaintiff counters that the language of the clause is broad enough to encompass the wrongful
11 death action and this tort claim relates to Defendant's duties under the Agreement.

12 The Court assesses the applicability of a forum selection clause under federal law,
13 rather than state law. *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 513 (9th
14 Cir. 1988). "Whether a forum selection clause applies to tort claims depends on whether
15 resolution of the claims relates to interpretation of the contract." *Id.* at 514.

16 In *Manetti-Farrow* the forum selection clause provided: "For any controversy
17 regarding interpretation or fulfillment of the present contract, the Court of Florence [Italy]
18 has sole jurisdiction." *Id.* at 511. Manetti-Farrow maintained its causes of action did not
19 relate to "interpretation" or fulfillment" of the contract, but were "pure" tort claims
20 independent of the contract. *Id.* at 514. Ultimately, the Court concluded the tort claims –
21 alleging a price squeeze, fraudulent use of business information, wrongful neglect of
22 delivery, and abrogation of the contract – "related in some way to rights and duties
23 enumerated in the exclusive dealership contract"; therefore, the claims related to
24 interpretation of the contract and the forum selection clause governed. *Id.*

25 To prove negligence, Arizona law requires: (1) a duty recognized by law to exercise
26 a standard of care; (2) defendant's failure to conform to the standard; (3) causal connection
27 between conduct and injury; and (4) actual damage. *Ontiveros v. Borak*, 136 Ariz. 500, 504,
28 667 P.2d 200, 204 (1983). The scope of Defendant's duty to provide emergency response,

and alleged breach thereof, necessary to establishing negligence directly relates to the rights and duties set forth in the Agreement. Indeed, Defendant admits in its Answer that "it entered into an arrangement with Pima Community Services Program to provide emergency response services to people within their homes." (Dkt. 2 at 2.) In its brief and at oral argument, Defendant also acknowledged it undertook a duty to William Newman based upon the Agreement (Dkt. 19 at 5; RT 4/16/09 at 19, 22). *See Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 207, 209 (7th Cir. 1993) (finding a forum selection clause, which designates a forum for "any dispute" "arising out of or relating to" the contract, governs a tort action "if the duty arises from the contract").

Significantly, the relationship between Plaintiff and Defendant came into existence solely because of the Agreement. Further, the Agreement defined the duties owed by Defendant to William Newman, i.e., installing the units, developing emergency plans specific to each Member, as well as monitoring, testing, and responding to emergency alerts. As in *Manetti-Farrow*, Plaintiff's claim relates in some way to the rights and duties enumerated in the Agreement; thus, it is within the bounds of the forum selection clause.

This conclusion is reinforced by the plain language of the forum selection clause – covering any actions "relating to" the Agreement – which is broader than the language at issue in *Manetti-Farrow,* 858 F.2d at 510 ("regarding interpretation or fulfillment of the contract"). *See Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009) (instructing that courts first look to the plain language of the contract and give terms their ordinary meaning); *see also Mediterranean Enter., Inc. v. Ssangyong* Corp., 708 F.2d 1458, 1464 (9th Cir. 1983) (finding a clause that uses "relating to" broad); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 406 (finding language "arising out of or relating to" broad). Because the parties' relationship arises out of the Agreement and the alleged negligence is connected to the contracted services, this action "relates to" the Agreement. Oxford American Dictionary 762 (Heald Colleges Ed. 1980) (defining "relate" as to have "connection with").

In sum, the broad language of the Agreement's forum selection clause encompasses Plaintiff's negligence action.

- 9 -

**CONCLUSION**

The Court's review of the governing law and the Agreement reveal that Plaintiff is a third-party beneficiary entitled to enforce the forum selection clause, which encompasses this wrongful death action because it "relates to" the Agreement. Plaintiff is entitled to have the action heard in Pima County Superior Court. Therefore, the Magistrate Judge recommends the District Court, after its independent review of the record, enter an order GRANTING Plaintiff's Motion for Remand (Dkt. 6).

Pursuant to 28 U.S.C. § 636(b), any party may serve and file written objections within 10 days of being served with a copy of this Report and Recommendation. If objections are not timely filed, they may be deemed waived. If objections are filed, the parties should use the following case number: **CV-08-0583-TUC-CKJ.**

DATED this 1st day of May, 2009.

D. Thomas Ferraro
United States Magistrate Judge